## R. J. DAVIS *v.* WILLIAM ROBERTSON.—SAME *v.* SAME.

Under the statutes of Mississippi, the trustees of insolvent banks are not restricted to the collection of such assets as are necessary to pay the debts of the corporation, but they have the right to collect all the assets and, after payment of debts, distribute the surplus among the stockholders.

In ordinary cases the decisions of the State courts, upon the construction of State laws, not involving questions under the Constitution of the United States, are authoritative. But in a case like this, where there is difference of opinion between the Supreme Court of the United States and the Court of Errors of Mississippi, it is a good reason for following the former, that it is more in harmony with the jurisprudence of Louisiana.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Clarke & Bayne*, for plaintiff. *Mott & Fraser*, for defendant and intervenor, appellant.

DAVIS
*v.*
ROBERTSON.

MERRICK, C. J.   On the first day of March, 1845, the Commercial Bank of Natchez commenced suit, in the Circuit Court of Madison county, Mississippi, against *R. J. Davis* and his sureties, upon a promissory note for $2647 44, due on the 1st day of March, 1839, with eight per cent. interest.

On the twelfth day of June of the same year, 1845, the charter of the Commercial Bank was declared forfeited, and the defendant, *William Robertson*, appointed trustee.   In April, 1847, *Robertson*, suggesting the dissolution of the corporation, obtained an order reviving the suit in his name as trustee, and obtained, at the same time, a judgment of default against the defendants.

This judgment by default was set aside, and on the motion of the defendants, and the production of a writ of injunction, showing that, at and previous to the institution of the action, the Commercial Bank had been injoined from the collection of its debts, the suit was dismissed.   In February, 1850, *Robertson*, as trustee of the Commercial Bank, sued out his writ of errors upon this decree to the High Court of Errors and Appeals of the State of Mississippi.

From August, 1850, to June, 1852, the writ of error still pending, the parties were treating for a compromise on a proposition of *Davis* and his sureties.

In the month of June the compromise was agreed upon.   One of the sureties of the defendant was to give, in discharge of the debt, his two drafts, payable the first day of October, 1852, for the amount of the face of the original note sued on, without interest, and pay the attorneys fees and costs.   The drafts were given accordingly, payable in this city, and the writ of error was dismissed on the 6th day of December, 1852.

Before the maturity of the drafts, *Davis* informed the attorney of the trustee, at Canton, Mississippi, that the payment of the drafts would be stopped, and that he wished him to proceed as before in the prosecution of the suit.

On the fourth day of October, the maturity of the drafts, the present suit was commenced by attachment to arrest the collection of the drafts by *Robertson*, but failing in this, the plaintiff was afterwards enabled to perfect his process by personal service.   Judgment was rendered against *Robertson* in the District Court, and the defendant has appealed.

The charter of the Commercial Bank of Natchez was declared forfeited under an Act of the Legislature of Mississippi, approved 26th of July, 1843.   This Act provided for the liquidation of the affairs of the banks whose charters should be declared forfeited, by the appointment of a trustee, who was required to give bond and empowered to collect the debts due to the defunct corporation, and distribute the proceeds according to law, to the payment of the debts of the corporation.

By a subsequent Act, approved February 28th, 1846, it was made the duty of trustees, appointed or to be appointed, to distribute the funds to the creditors of the bank in the order therein laid down, and the surplus, if any, ratably among the stockholders.

The High Court of Errors and Appeals of Mississippi, shortly after the maturity of the drafts, decided that the trustee had no authority to collect of the debtor of the bank any more funds than were sufficient to pay the debts. It being admitted that the trustee had already contributed more than sufficient to pay the debts, as a necessary consequence he was, under that decision, incompetent to collect, on their original contracts, anything further from the debtors of the bank.   Since the decision, by the High Court of Errors and Appeals, of the case of *Coulter and Richard's Executors* v. W.

95

*Robertson, Trustee,* the question has been considered by the Supreme Court of the United States, in the case of *Bacon et al.* v. *Robertson et al.,* 18 Howard's U. S. Reports, 480, wherein the latter court hold directly the reverse of the former.

In ordinary cases we are accustomed to consider the decision of the State tribunals, upon the construction of their own laws, not involving constitutional questions arising under the Constitution of the United States, as the most authoritative exposition of them, and decisive of the meaning of such statutes.

But there are two reasons which induce us to adopt the decision of the Supreme Court of the United States as controlling our conclusions in this case.

1st. The first is, that the decision of the Supreme Court of the United States is more in accordance with what we conceive to be the settled jurisprudence of Louisiana. Under our legislation we believe that the debtor of a corporation has never been considered discharged from his obligation by the forfeiture of the charter of such institution. Indeed our courts have, under their equitable powers, appointed (when necessary) a receiver to collect the debts due to such defunct corporation, for the purpose of paying the debts due by it.

2d. From the principles announced by the Supreme Court of the United States, we infer that the courts of the United States have taken, or will take, jurisdiction (at least of the funds in the hands of the trustee) in a suit brought, or to be brought, by the non-resident stockholders against those residing in Mississippi and the trustee. And as a legitimate consequence of the reasoning of the Supreme Court of the United States, we have reason to suppose that the sum of money now in controversy, being in the hands of the trustee, will be subject to distribution, to be ordered by that or the Circuit Court.

Moreover, equity does not require that the stockholders who now appear to have possesion of that fund by their agent and trustee, and who, in their corporate capacities, furnished the consideration of the original note, the subject of the compromise, should be compelled to return to the plaintiff their money, which he has held for so many years without paying interest.

In conclusion, we observe that it is by no means certain that, under the law as settled by the courts of Mississippi, the plaintiff would be entitled to recover. It is very questionable whether the plaintiff is not estopped by the compromise from contesting the plaintiff's capacity to receive or retain the money. For a compromise at common law appears to us to be as conclusive upon the parties and somewhat more comprehensive in what it embraces than the transaction under our own Code. Error of law is not a ground for its rescission, and it can only be set aside where there has been fraud or misrepresentation. 1st Bouvier Inst. 309; *Bellée* v. *Lumly,* 2 East. Rep. 469; 1st Comyn on Contracts, 35, (38); C. C. 1824, 3046, 3047.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment against the demand of the plaintiff and in favor of the defendant, and that the plaintiff pay the costs of both courts.